**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ALEXANDRA TIAKOH**,

  Plaintiff,

v.            Case No. 8:25-cv-01706-WFJ-AEP

**EXPERIAN INFORMATION**
**SOLUTIONS, INC.**,

  Defendant.

_____/

## **ORDER**

Before the Court is Defendant Experian Information Solutions, Inc.'s ("Experian") Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), Dkt. 33, *pro se* Plaintiff Tiakoh's response in opposition, Dkt. 34, and Defendant's reply. Dkt. 35. After careful consideration, the Court grants Defendant's motion to dismiss Plaintiff's Amended Complaint with prejudice.

## **BACKGROUND**

Plaintiff Tiakoh sues Defendant Experian, alleging violations of the Fair Credit Reporting Act ("FCRA"), specifically 15 U.S.C. §§ 1681e(b), 1681i(a), and 1681g(a). Dkt. 32 ¶¶ 42–58. On July 23, 2020, Plaintiff voluntarily filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District

of Florida, Tampa Division, Case No. 8:20-bk-05617-MGW.[1] *Id.* ¶ 6. Plaintiff's debt was discharged on October 27, 2020. *Id.* Importantly, the Amended Complaint readily admits that "Plaintiff acknowledges these facts and does not seek to have the bankruptcy expunged from credit reporting." *Id.*

At some unspecified time, Plaintiff received consumer disclosures from Experian that "identified LexisNexis Risk Data Management Inc. as the third-party public-record vendor associated with Plaintiff's bankruptcy entry." *Id.* ¶ 7. In December 2020, Plaintiff filed a dispute directly with LexisNexis Risk Solutions, identifying that the bankruptcy entry was being reported with an incorrect address. *Id.* ¶ 8. According to Plaintiff, LexisNexis Risk Solutions removed Plaintiff's bankruptcy record from its database. *Id.*

Despite LexisNexis Risk Solutions' deletion, Plaintiff claims that Experian continued to report the bankruptcy entry and identified LexisNexis Risk Data Management Inc. as the vendor associated with the entry in consumer disclosures provided to Plaintiff from 2021 to 2025. *Id.* ¶ 10. Plaintiff attempted to dispute the bankruptcy entry on at least seven occasions between January 2021 and June 2025. *Id.* ¶ 13. "The substance of these disputes was Experian's continued reporting and

---

[1] The Court takes judicial notice of the MDFL's bankruptcy docket in 8:20-bk-05617-MGW. *See Cash Inn of Dade, Inc. v. Metro. Dade Cnty.*, 938 F.2d 1239, 1243 (11th Cir. 1991) ("A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases."); *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)) (noting "[a] district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment[,]" including public records).

representation that the bankruptcy had been 'verified' after LexisNexis [Risk Solutions] had removed the record." *Id.* In response to these disputes, Experian's reinvestigation letters allegedly told Plaintiff that it contacted "the vendor who originally provided the information" and that "the information has [been] certified to Experian . . . [as] accurate." *Id.* ¶ 14. As such, Plaintiff contends that "Experian made a false factual representation by continuing to attribute the bankruptcy entry to LexisNexis [Risk Data Management Inc.] and by representing that its identified vendor certified the entry at a time when that vendor was not maintaining the record." *Id.* ¶ 16. Stated differently, Plaintiff is alleging that Experian violated the FCRA when it failed "to conduct a reasonable reinvestigation after being placed on notice of the vendor's removal and the address mismatch," and "[t]hese allegations concern false source attribution and unreasonable reinvestigation under 15 U.S.C. §§ 1681e(b) and 1681i(a), independent of the historical existence of the bankruptcy filing." *Id.* ¶ 18.

In May 2025, Plaintiff claims she could not access her consumer file via Experian's online consumer portal when attempting to dispute a Verizon tradeline. *Id.* ¶ 24. Experian informed her that all disputes and requests for her consumer file must be submitted through Experian's litigation counsel. *Id.* ¶ 25. After submitting two disputes and requesting her file through Experian's counsel, Experian generated

3

and mailed two separate reports. *Id.* ¶ 31. Plaintiff claims that requiring her to contact Experian's counsel to access her consumer file violates 15 U.S.C. § 1681g. *Id.* ¶ 25.

On July 1, 2025, Plaintiff filed the instant action asserting that Experian willfully violated the FCRA, 15 U.S.C. §§ 1681e(b), 1681i(a), and 1681g(a). *See* Dkt. 1. On February 4, 2026, the Court granted Experian's motion to dismiss, explaining that each of Plaintiff's alleged violations of the FCRA failed to state a claim. Dkt. 25. Specifically, the Court emphasized that "Plaintiff failed to establish the threshold issue of whether Experian even reported factually inaccurate information." *Id.* at 8. Plaintiff subsequently filed a motion for leave to file an amended complaint, Dkt. 30, which the Court granted. Dkt. 31. However, the Court warned Plaintiff that "any subsequent complaint that fails to state a claim will be dismissed with prejudice." *Id.* (citing *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019); *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018)). Plaintiff filed her Amended Complaint on March 2, 2026, Dkt. 32, and Experian responded by filing the instant motion to dismiss. Dkt. 33.

## LEGAL STANDARD

As an initial matter, *pro se* litigants' filings are liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). This liberal reading, however, does not exempt *pro se* plaintiffs from the pleading standards outlined in the Federal Rules of Civil Procedure or the Local Rules of the Middle

4

District of Florida. *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005); *Caton v. Louis*, No. 2:07-CV-32-FtM-99SPC, 2007 WL 9718731, at *1 (M.D. Fla. Feb. 21, 2007). Moreover, a district court may not serve as a *pro se* plaintiff's "*de facto* counsel" or "rewrite an otherwise deficient pleading. . . ." *See GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in a light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). The pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (citation modified) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). The Court does not need to accept as true any bare legal conclusions offered in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

Despite the Court's prior analysis explaining why the initial complaint failed to state a claim, Dkt. 25 at 5–10, Plaintiff continues to allege that the undisputed bankruptcy entry in her consumer files and reports violated the FCRA. As such,

Experian's motion to dismiss the Amended Complaint is due to be granted since Plaintiff has still failed to state a claim for each of her alleged FCRA violations.

## I.  Plaintiff's FCRA Claims

The purpose of the FCRA is "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). "The FCRA creates a private right of action against consumer reporting agencies for the negligent, or willful, violation of any duty imposed under the statute." *Collins v. Experian Info. Sols., Inc.* 775 F.3d 1330, 1333 (11th Cir. 2015) (citing *Safeco*, 551 U.S. at 53 (2007)).

### a.  Counts I and II—15 U.S.C. § 1681e(b) and § 1681i(a) claims

Plaintiff alleges that Experian violated 15 U.S.C. § 1681e(b) and § 1681i(a) of the FCRA. Dkt. 32 ¶¶ 42–49. Experian raises the same argument that it made in its first motion to dismiss—namely, the § 1681e(b) and § 1681i(a) claims fail because Plaintiff did not allege any viable inaccuracy. Dkt. 33 at 4. Again, the Court agrees and finds that Plaintiff has failed to allege that any of her consumer reports or files contained a cognizable inaccuracy.

Under § 1681e(b), "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To establish a claim under § 1681e(b), a plaintiff

must show "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Coleman v. Experian Info. Sols., Inc.*, 655 F. Supp. 3d 1285, 1300 (N.D. Ga. 2023) (quoting *Enwonwu v. Trans Union, LLC*, 364 F. Supp. 2d 1361, 1365 (N.D. Ga. 2005)); *see also Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021) ("To state a claim under § 1681e, the plaintiff must show that the agency's report contained factually inaccurate information, that the procedures it took in preparing and distributing the report weren't 'reasonable,' and that damages followed as a result."). Similarly, "[t]he elements of a claim under § 1681i—which focuses on the consumer's credit 'file' rather than his credit 'report'—are the same, except that the plaintiff needn't show that the agency prepared and distributed a report." *Losch*, 995 F.3d at 944 (quoting *Collins*, 775 F.3d at 1335). Because Plaintiff challenges Experian's procedures and reinvestigation of her report, Dkt. 32 ¶¶ 43, 47, the report-file distinction is immaterial, and the Court addresses Counts I and II together.

Focusing in on element one, "the plaintiff must allege facts showing, at a minimum, that the agency's [report or] file contained factually inaccurate information." *McWhorter v. Trans Union LLC*, No. 23-13427, 2024 WL 3385676, at *3 (11th Cir. July 12, 2024) (citing *Losch*, 995 F.3d at 944; *Collins*, 775 F.3d at

7

1335). A consumer report is inaccurate when it contains information that is either "factually incorrect, objectively likely to mislead its intended user, or both." *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020). To be "factually incorrect," the challenged information must be "objectively and readily verifiable." *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1368 (11th Cir. 2024). To be objectively misleading, the consumer report must be "so misleading that it is objectively likely to cause the intended user to take adverse action against its subject, [such that] it is not maximally accurate." *Erickson*, 981 F.3d at 1252. "[W]hether a report is misleading is an objective measure, one 'that should be interpreted in an evenhanded manner toward the interests of both consumers and potential creditors in fair and accurate credit reporting.'" *Id.* (quoting *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991)). Ultimately, the Court must "look to the objectively reasonable interpretations of the report." *Holden*, 98 F. 4th at 1367 (citation modified).[2]

---

[2] Plaintiff also claims the violations of § 1681e(b) and § 1681i(a) were "willful," which requires "proof that 'a consumer reporting agency either knowingly or recklessly violated'" the FCRA—that is, "[a] reckless violation of the FCRA requires the consumer to establish that the agency's action 'is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'" *Celestine v. Cap. One*, 741 F. App'x 712, 715 (11th Cir. 2018) (quoting *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009)). As discussed below, the Court finds that Plaintiff failed to plausibly allege that Experian violated the FCRA; therefore, she also failed to plausibly allege that Experian did so willfully. *See McWhorter*, 2024 WL 3385676, at *4.

Here, the consumer reports and files Experian provided to Plaintiff were neither factually incorrect nor objectively likely to mislead its intended user. First, the bankruptcy entry in Plaintiff's reports and files cannot be factually incorrect since it is objectively and readily verifiable that Plaintiff filed for Chapter 7 bankruptcy in the Middle District of Florida on July 23, 2020, and her debt was discharged on October 27, 2020. Dkt. 32 ¶ 6; *see also* 8:20-bk-05617-MGW. Second, the bankruptcy entry is not objectively likely to mislead an intended viewer, since Plaintiff actually filed for Chapter 7 bankruptcy in 2020. Dkt. 32 ¶ 6. As the Court mentioned in its prior dismissal order, "there is nothing improper [or inaccurate] about Experian simply noting that Plaintiff went through a Chapter 7 bankruptcy in the Middle District of Florida, as 'bankruptcy discharge is merely an injunction against certain means of enforcing a debt, not an expungement of a debt from one's record.'" Dkt. 25 at 9 (citing *Losch*, 995 F.3d at 945). Therefore, the Court finds that Plaintiff has failed to sufficiently allege that there was any factually inaccurate information in her consumer reports or files.

Plaintiff, of course, cannot challenge the undisputed fact of her bankruptcy. *See* Dkt. 32 ¶ 6 ("Plaintiff acknowledges these facts and does not seek to have the bankruptcy expunged from credit reporting."). Instead, the Amended Complaint alleges that the supposed inaccuracy is not the bankruptcy entry itself, but that Experian continued to report "that the bankruptcy had been 'verified' after

9

LexisNexis [Risk Solutions] had removed the record." *Id.* ¶ 13. Therefore, Plaintiff contends that "Experian made a false factual representation by continuing to attribute the bankruptcy entry to LexisNexis [Risk Data Management Inc.] and by representing that its identified vendor certified the entry at a time when" another vendor—i.e., LexisNexis Risk Solutions—had maintained and removed the record of Plaintiff's bankruptcy from its own system. *Id.* ¶ 16. In other words, Plaintiff argues that the alleged inaccuracy stems from Experian "[p]resenting the [bankruptcy] entry as vendor-certified," which was "objectively likely to mislead creditors about the reliability of the information." Dkt. 34 at 3, 12, 14. The Court disagrees.

First, and perhaps most importantly, Plaintiff sidesteps the undisputed fact that she filed for Chapter 7 bankruptcy on July 23, 2020, and her debt was discharged on October 27, 2020. Dkt. 32 ¶ 6. As such, regardless of which vendor was supplying information to Experian—whether it be LexisNexis Risk Solutions or LexisNexis Risk Data Management, Inc.—the information provided in Plaintiff's consumer files and reports was accurate. The undisputed fact of Plaintiff's 2020 bankruptcy summarily defeats any attempt to state a claim under § 1681e(b) and § 1681i(a). *See McWhorter*, 2024 WL 3385676, at *3 (finding the plaintiff failed to state a FCRA claim when the reported information was accurate).

10

Second, even when accepting as true that Plaintiff's consumer reports and files had "false vendor certifications," Dkt. 34 at 11–12, this supposed inaccuracy is not "objectively likely to mislead" the intended recipient into believing that the bankruptcy entry itself was false or inaccurate. *Erickson*, 981 F.3d at 1252. Again, *Plaintiff actually filed for bankruptcy in 2020*, Dkt. 32 ¶ 6, so the Court is unsure of how any potential creditor viewing Plaintiff's consumer report would be "mis[led] . . . about the reliability of the [bankruptcy] entry," Dkt. 34 at 12, since the entry is objectively and verifiably correct. The fact that Experian allegedly listed the wrong vendor who provided and verified the bankruptcy information does not automatically mean the recipient would be "objectively likely to be mis[led]" about Plaintiff's creditworthiness. *Erickson*, 981 F.3d at 1252. Indeed, the Eleventh Circuit has noted that not every inaccuracy is "objectively likely to mislead," emphasizing that "the fact that some user somewhere could possibly squint at a report and imagine a reason to think twice about its subject would not render the report objectively misleading." *Id.* The same concept applies here—even if a potential creditor knows of the alleged vendor discrepancy in Plaintiff's consumer report, the creditor is not being objectively misled, as Plaintiff did file for bankruptcy in 2020. *See* Dkt. 32 ¶ 6.

To be clear, Plaintiff would be able to state an FCRA claim if she had never filed for bankruptcy or if Experian inaccurately reported that Plaintiff had

11

outstanding debts despite having those debts discharged during bankruptcy. *See e.g.*, *Losch*, 995 F.3d at 945 ("For instance, Losch's May 2018 report stated that as of March 2018, he (1) had a balance of $139,853, (2) had a past due amount totaling $10,006, and (3) was more than 180 days late. None of that was true following the bankruptcy-debt discharge."); *Benjamin v. Experian Info. Sols., Inc.*, 561 F. Supp. 3d 1330, 1337 (N.D. Ga. 2021) (finding that even after a bankruptcy discharge, "Experian was still reporting an owed balance of $330 on the MoneyLion account and a past-due amount of $139 on that account"); *Coleman*, 655 F. Supp. 3d at 1302 ("[T]he First Franklin debt was discharged in bankruptcy, any reporting suggesting the debt was still viable was inaccurate."). Stated differently, falsely reporting that a consumer went through a bankruptcy or inaccurately listing debts that were discharged during bankruptcy would objectively mislead a creditor about a consumer's creditworthiness. But that is not what Plaintiff alleges in this case; instead, Plaintiff claims that Experian listing the wrong vendor in the (undisputedly accurate) bankruptcy entry somehow violates the FCRA. It does not, and Plaintiff fails to point to any binding authority to the contrary. *See* Dkt. 34 at 13–14. The only "objectively reasonable interpretation[] of [Plaintiff's consumer] report" is that there is no inaccuracy that gives rise to a FCRA violation. *Holden*, 98 F.4th at 1367.

At bottom, it is Plaintiff's 2020 bankruptcy that is affecting her creditworthiness, not the minor discrepancy about which vendor supplied Experian

12

with information about Plaintiff. Therefore, Plaintiff grants Experian's motion to dismiss Counts I and II for failure to state a claim.

### b. *Count III—Plaintiff's § 1681g(a) claim*

Plaintiff's third claim is that Defendant violated § 1681g(a) of the FCRA. Dkt. 32 ¶¶ 50–58. Under § 1681g, a consumer reporting agency is required to provide "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1); *see also Hovater v. Equifax, Inc.*, 823 F.2d 413, 417 (11th Cir. 1987) (citing 15 U.S.C. § 1681g) ("Upon request and identification, the reporting agency is required to divulge the information in its files concerning the interested consumer.").

Here, the Amended Complaint—accepted as true—makes clear that Plaintiff submitted two requests to Experian to see her consumer file under § 1681g, and Experian provided her two separate consumer files following her requests. Dkt. 32 ¶¶ 24–31 ("After submitting two disputes and requesting her file through counsel, Experian generated and mailed two separate reports."). While Plaintiff complains that she initially was denied access to Experian's online consumer portal, she plainly alleges that after contacting Experian's litigation counsel, all the information in her consumer file was provided, including an Address ID and Geo Code. *Id.* ¶¶ 24–27, 31. Based on these allegations, the Court cannot find any violation of § 1681g(a). Indeed, § 1681g imposes a specific disclosure obligation only when a consumer

13

follows the statutory procedure for requesting their file, and the allegations in the Amended Complaint show that Plaintiff invoked this provision of the FCRA in May 2025 and Experian fully complied with the request. *Id.* ¶¶ 24, 31. Therefore, Count III is due to be dismissed.

Plaintiff, however, argues that Experian must have previously violated § 1681g since the two consumer files provided to Plaintiff in May of 2025 contained an Address ID and Geo Code that were absent in previous consumer file requests. Dkt. 34 at 17; *see* Dkt. 32 ¶¶ 29–36. This argument fails for two reasons. First, as discussed above, Plaintiff's § 1681g claim in Count III is based on her May 2025 requests for her consumer file, which Experian provided as required by the FCRA. Dkt. 32 ¶¶ 24, 31. The allegations in Count III do not identify any pre-May 2025 consumer file request that Experian refused or ignored. *See id.* ¶¶ 54, 56, 57.

Second, the failure to provide Address IDs and Geo Codes in prior consumer files does not violate § 1681g. The FCRA defines a "file" to include "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g). "A file is simply the information retained by a consumer reporting agency." *Collins*, 775 F.3d at 1335. The main distinction between a consumer report and a file is that "a 'consumer report' requires communication to a third party, while a 'file' does not." *Id.* While not binding on this Court, other circuit courts have persuasively held that the "file"

14

required to be disclosed under § 1681g(a)(1) only needs to contain information that would be included in the consumer's credit report. *See Gillespie v. Trans Union, Corp.*, 482 F.3d 907, 909–10 (7th Cir. 2007) (interpreting the FCRA together with legislative history and guidance from the Federal Trade Commission to conclude that "file" under § 1681g(a)(1) "means information included in a consumer report"); *Tailford v. Experian Info. Sols. Inc.*, 26 F.4th 1092, 1101–02 (9th Cir. 2022) (citation modified) ("[A] consumer's file includes all information on the consumer that is recorded and retained by a [consumer reporting agency] that might be furnished, or has been furnished, in a consumer report on that consumer.").

Here, the consumer files sent to Plaintiff contained all the information that would have been contained in her consumer report, *plus* some "internal identifiers" labeled "Address ID" and "Geo Code." Dkt. 32 ¶¶ 31–32. These internal identifiers that Experian uses to "match public records to a consumer's file," *id.* ¶ 32, is not the type of information that would be included on a consumer report. *See Gillespie*, 482 F.3d 908 (finding that TransUnion's "purge date" that it generates for "its internal purposes" did not need to be disclosed in a consumer file under § 1681g(a)(1)); 15 U.S.C. § 1681a(d)(1) (defining the type of information that would be in a "consumer report"). As such, the Court finds that Experian's alleged failure to include internal system identifiers in prior consumer files does not give rise to a § 1681g(a)(1) violation. Indeed, the internal identifiers Experian uses have no "bearing on a

15

consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681a(d)(1); *see also Tailford*, 26 F.4th at 1104 (finding that "the dates on which [the plaintiffs'] employment dates were reported to Experian" from a vendor did not need to be disclosed under § 1681g(a)(1) since such information has no bearing on a consumer's creditworthiness). Plaintiff's argument to the contrary finds no support in the FCRA's text, Eleventh Circuit precedent, or the available persuasive authority. Therefore, the Court dismisses Count III for failure to state a claim.

## CONCLUSION

After granting Plaintiff an opportunity to amend her complaint, the Court warned her that "any subsequent complaint that fails to state a claim will be dismissed with prejudice." Dkt. 31 (citing *Silberman*, 927 F.3d at 1132; *Woldeab*, 885 F.3d at 1291). The repeated failure to state a viable FCRA claim permits this Court to dismiss the Amended Complaint with prejudice. *See England v. Hillsborough Cmty. Coll.*, 546 F. App'x 881, 885 (11th Cir. 2013) (citing *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001)) (affirming dismissal with prejudice after "two opportunities to file amended complaints, and, each time, gave [the plaintiff] explicit instructions as to what those amended complaints should contain"). In short, a third complaint is not called for here.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant Experian's Motion to Dismiss the Amended Complaint, Dkt. 33, is **GRANTED.**

2. Plaintiff Tiakoh's Amended Complaint, Dkt. 32, is **DISMISSED with prejudice**.

3. The Clerk is directed to **TERMINATE** all pending deadlines and **CLOSE** this case.

**DONE AND ORDERED** at Tampa, Florida, on April 3, 2026.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO:**
Plaintiff, *pro se*

17